ELLA R. CUSHMAN and others, In Equity,

*vs.*

JOHN M. GOODWIN, Executor.

York.    Opinion July 19, 1901.

*Will.    Life Estate.    Power of  Disposal.    Remainder.    Equity.    Parties.    Trust*
*Funds.    Identity.*

Upon a bill in equity by the heirs of Benjamin G. Clifford seeking to follow the funds received by his sister Achsah, a life tenant with power of sale under his will from sales of real estate and now in the possession of her executor, the defendant; also, to obtain a decree directing the executor to turn over the same to them, the court holds the following to be the legal interpretation and construction of the will in question.

The testator unquestionably intended that his sisters, Achsah and Mary Ann, should take a life estate in the real estate devised to them either solely or jointly, with a remainder to the survivor of the two, for her life, subject only to the contingency of the marriage of either of them, and that after the death of the survivor, the remainder should go to his heirs at law then living; but each sister was given the power to dispose of any portion of the real estate devised to her, and to convert the same into money, to be held and invested by each and to take the place of the real estate sold.  More than this, each was given the right to use any part of the principal of the fund received from such sales for her necessities, comfort and convenience, and each was made the judge of the necessity of using for this purpose any part of such principal.  But this right to use any portion of the principal by either of these devisees for her necessities, is one that must be exercised during the enjoyment of the life estate.

*Held;* that any real estate which remained undisposed of upon the death of the survivor of these two sisters, and the proceeds of the sale of the real estate which remained unexpended at that time, as if it were the real estate sold and of which it took the place, went to the testator's heirs at law living at the time of the death of the survivor.

*Held;* that the sums of money, therefore, which the sister, Achsah, received from sales of real estate constituted a trust fund, the income of which belonged to her during her life and after her death to her sister for her life, and then went, if unexpended by either during the enjoyment of the life estate by either, to the heirs under the terms of the will; *also,* that the heirs being thus entitled to the unexpended portion of this trust fund are the proper persons to maintain this bill in equity, rather than the personal representative of the testator, because of the provision in the will that the consideration

received for real estate sold is to be held in the same manner and subject to the same limitations as provided in reference to the real estate.

Such bill cannot be maintained unless the plaintiffs are able to identify the trust fund in the executor's possession. Upon the death of a person holding a trust fund, if the identity of the fund is lost and cannot be distinguished from the mass of the trustee's property, the cestui que trust stands in the position of a general creditor, and cannot maintain a bill in equity to require the personal representatives of the deceased trustee to pay over to him any sum held by the deceased in trust.

But the mere act by a trustee of mingling trust money with his own by depositing the different moneys in a bank in his individual name, with nothing done by the banker to distinguish the trust money from the individual money, does not necessarily prevent an identification of the trust money. Equity will undertake to disentangle the accounts and give to the cestui que trust the portion that belongs to him.

The plaintiffs have failed in the reported evidence, in this case, to identify this fund in the possession of the defendant executor, although it seems not improbable that they may be able to do so upon a further hearing.

It is therefore considered by the court advisable that the bill be retained and remanded for further proceedings before a single justice, when the proper course to pursue, in order to protect the interests of the parties, can be better determined after hearing them. It may then be decided to be best to order a further hearing upon the questions of facts before a master or otherwise, or to convert the cause into an action at law, or to adopt such other course as will best subserve the interests of justice.

On report.   Case remanded for further hearing.

Bill in equity heard on bill, answer and testimony, seeking to establish a trust and follow its proceeds under the will of Benjamin G. Clifford, late of Biddeford, deceased.

The case appears in the opinion.

*G. F. and Leroy Haley*, for plaintiffs.

*J. M. Goodwin*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

WISWELL, C. J.   One Benjamin G. Clifford, of Biddeford, at the time of his decease, died testate in September, 1899. By his will, which was duly admitted to probate, he devised to his sister, Achsah Clifford, various parcels of real estate, upon this limitation, "to have and to hold so long as she shall remain single and unmar-

ried and during her natural life, but on her marriage or decease then to my sister, Mary Ann Clifford, if she shall remain single and unmarried, to have and to hold to her during her natural life."

Other parcels of real estate he devised to his two sisters, Achsah and Mary Ann Clifford, in equal shares, upon a similar limitation, as follows, "to have and to hold the same during their natural lives or during the time they shall remain single and unmarried, but on the decease or marriage of either of them, I devise and give said real estate to the sister remaining single and unmarried and during her natural life." He also devised to his sister, Mary Ann Clifford, a life estate in certain other real estate, subject to her marriage, and after making some small bequests, gave to his two sisters, Achsah and Mary Ann, the income of all the rest and residue of his estate, in equal shares, so long as they should remain unmarried and during their natural lives, and upon the death or marriage of either to the survivor or one remaining unmarried for her life.

The will also contained this provision: "Provided however always, that sister, Achsah or Mary Ann has the full right and authority to sell absolutely in fee any and all the real estate devised to her separately and to convey the same in fee simple giving a good and perfect title thereto; and where said real estate is conveyed to them jointly, or the income thereof jointly, then either may sell and convey one-undivided half in fee simple, giving a good and perfect title thereof, or they may join and convey and thereby sell and convey a good and perfect title thereof of the same as though said property had been devised to them or either of them and their heirs; and they or either of them shall hold the consideration received for said real estate in the same manner and subject to the same limitations as above provided as to the real estate, and it is hereby provided that each may use the income of said estate so devised to her, according to her discretion, and shall have the right and authority to use any part of the principal of said property devised to each as her necessities, and comfort and convenience may require, each for herself to determine as to said necessity, comfort and convenience for herself, as to the part devised and bequeathed to her. . . . . The consideration received on the

sale of any part of said real estate may be put in some savings bank or otherwise invested according to the best discretion of my said sisters."

By another clause of the will he devised, upon the decease of the survivor of his sisters, Achsah and Mary Ann, all of his estate, "and all the money received on sales thereof and unused and unexpended," to his heirs then living, to descend and be distributed according to the statutes of this state.

The sister, Achsah, died on Nov. 27, 1897, and the sister, Mary Ann, died on Oct. 8, 1898, neither of them having married. During their lifetimes they jointly, and Achsah solely, conveyed various portions of the real estate devised to them for their lives, and Achsah received the consideration for the real estate conveyed by her and her share of the consideration received by them jointly. But it does not appear that she ever specifically and separately made any investments of such sums received by her, nor did she deposit any of these sums in a savings bank in a separate account. At the time of her death Achsah had deposits to her credit in different savings banks aggregating the sum of $10,087.50, and it is claimed that the money received by her from these sales of real estate was deposited by her in one or more of these banks, in her own name, with other money belonging to her. None of the funds standing to her credit in these banks were transferred, after the death of Achsah, to Mary Ann during her life, nor to the estate of Mary Ann since her death. But all of the deposits standing to the credit of Achsah in these banks, upon her death, went into the possession and control of the defendant as her executor. In this bill in equity the heirs of Benjamin G. Clifford seek to follow the funds received by Achsah from these sales of real estate in the possession of her executor, and to obtain a decree directing the executor to turn the same over to them.

There can be no controversy as to the meaning or effect of the will of Benjamin G. Clifford. He unquestionably intended that his sisters, Achsah and Mary Ann, should take a life estate in the real estate devised to them either solely or jointly, with a remainder to the survivor of the two, for her life, subject only to the con-

tingency of the marriage of either of them, and that after the death
of the survivor the remainder should go to his heirs at law then liv-
ing, but each sister was given the power to dispose of any portion of
the real estate devised to her, and to convert the same into money,
to be held and invested by each and to take the place of the real
estate sold.   More than this, each was given the right to use any
part of the principal of the fund received from such sales for her
necessities, comfort and convenience, and each was made the judge
of the necessity of using for this purpose any part of such princi-
pal.   And the language of the will was sufficient and appropriate
to carry such intention into effect.

Consequently, each of these devisees took a life estate only, sub-
ject to the marriage of each, with a remainder to the survivor for
her life, and the heirs at law of the testator, upon the death of the
survivor took the remainder in fee, subject to the power given to
each of the two sisters to convert any portion of the real estate
into money, and to use for her comfort and convenience so much
of the principal of the money thus obtained as she might deem
necessary for this purpose.   Consequently, any real estate that
remained undisposed of upon the death of the survivor of these two
sisters, and the proceeds of the sale of real estate which remained
unexpended at that time, as if it were the real estate sold and of
which it took the place, went to the testator's heirs at law living
at the time of the death of the survivor.   *Hall* v. *Otis*, 71 Maine,
326 ; *Copeland* v. *Barron*, 72 Maine, 206 ; *Whittemore* v. *Russell*,
80 Maine, 297 ; *Hatch* v. *Caine*, 86 Maine, 282.   But this right
to use any portion of the principal by either of these devisees for
her necessities, was one that must be exercised during the enjoy-
ment of the life estate.   *Ford* v. *Ticknor*, 169 Mass. 276; *Small*
v. *Thompson*, 92 Maine, 539.

The sums of money, therefore, which the sister, Achsah, received
from sales of real estate constituted a trust fund, the income of
which belonged to her during her life and after her death to her
sister for her life, and then went, if unexpended by either during
the enjoyment of the life estate by either, to the heirs under the
terms of the will.   And the heirs being thus entitled to the unex-

pended portion of this trust fund, are the proper persons to maintain this bill in equity, rather than the personal representative of the testator, because of the provision in the will that the consideration received for real estate sold should be held in the same manner and subject to the same limitations as provided in reference to the real estate.  *Hovey* v. *Dary*, 154 Mass. 7.

This bill against the defendant as executor of the will of Achsah, however, cannot be maintained unless the plaintiffs are able to identify the trust fund in the possession of the executor. Upon the death of a person holding a trust fund, if the identity of the fund is lost and cannot be distinguished from the mass of the trustee's property, the cestui que trust stands in the position of a general creditor of the estate, and can not maintain a bill in equity to require the personal representative of the deceased trustee to pay over to him any sum held by the deceased in trust.  *Portland, etc., Steamboat Co.* v. *Locke*, 73 Maine, 370; *Fowler* v. *True*, 76 Maine, 43.

But, the mere act by a trustee of mingling trust money with his own by depositing the different moneys in a bank in his individual name, with nothing done by the banker to distinguish the trust money from the individual money, does not necessarily prevent an identification of the trust fund.  Equity will undertake to disentangle the accounts, and give to the cestui que trust the portion that belongs to him.  *Houghton* v. *Davenport*, 74 Maine, 590, citing 2 Perry on Trusts, § 837; *Knatchbull* v. *Hallett*, L. R. 13 Chan. Div. 696; *Central National Bank* v. *Conn. M. L. Ins. Company*, 104 U. S. 54.

In the present case, then, the proceeds of the sales of real estate received by the defendant's testatrix constituted a trust fund to be held by her as above indicated, and this fund or any unexpended portion thereof, upon her death, went into the control of the defendant charged with the same trust, if its identity can be established.

From the evidence reported, showing the very frugal mode of life of the defendant's testatrix, the fact that she had the use of an income of the property devised to her by her brother, and of other property

owned by her, as well, and the large amount of deposits made by her in savings banks, it is at least probable that no considerable amount of the principal had been expended by her for her support. But the plaintiffs have failed, in the reported evidence, to identify this fund in the possession of the executor, although it seems not improbable that they may be able to do so upon a further hearing.

It is therefore considered advisable that the bill be retained and remanded for further proceedings before a single justice, when the proper course to pursue, in order to protect the interest of the parties, can be better determined after hearing them. It may then be decided to be best to order a further hearing upon these questions of fact before a master or otherwise, or to convert the cause into an action at law, or to adopt such other course as will best subserve the interests of justice.

*So ordered.*