ANNIE E. WILLIAMS, Administratrix d. b. n. c. t. a.
of Nancy Floyd, deceased,

*vs.*

CHARLES FLOYD, Administrator d. b. n.
of Smith Floyd, deceased.

*Sussex, Nov.* 18, 1920.

A gift of personal property for life with no gift over is absolute.

If there be a general gift of personal property to one for life, with a gift over on a contingency which does not happen, the life beneficiary takes an absolute estate.

Where there is a gift of a share of testator's personal estate generally for life or widowhood with a gift over at the death or marriage of the life .tenant, the executory gift is valid.

A gift for life of specific personal property with a gift over vests in first taker an absolute interest, except where it is of a chattel which may be used by the first taker without being consumed, when it is an executory devise, but the latter principle does not apply where the gift was of all of testator's personal estate called "movable property," and its character not shown.

A will devising movable property to testator's husband with gift over *held* valid as a gift over after a life tenant's death, so that money in bank to life tenant's credit, clearly realized from the sale of such personal property, belonged to beneficiaries under giver's will.

Where a will gave testator's husband a life estate in her real property with power to sell timber for his support and for improving farm, and he sold the timber, placing the proceeds in the bank, where they remained at his death, her beneficiaries were entitled to such funds.

An executory devise after a gift, with a general and absolute power of disposal, is void, but where a life estate is expressly given with the power of disposal for support of life tenant, or for specified purposes, a gift of what remains is valid.

Where property has been sold by life tenant in execution of power of disposition for an authorized purpose, any proceeds, remaining unexpended at his death, go to remaindermen, and the absence of a gift over expressly of what remains does not justify a different conclusion.

Where a testator left her husband a life estate in lands, with right to sell timber for his support and improvement of farm, a remainder of funds from timber sold left in the bank, though mingled with other funds of the life tenant, and a bond purchased with a portion of such funds, properly identified, · go to the remaindermen, and equity will disentangle the accounts.

While beneficiaries might have enforced against the estate of life tenant their rights to the unexpended proceeds of the sale of timber authorized for tenant's support and farm's improvement, the administrator of the donor's estate can collect the same for them.

Where a proceeding by wife's executor against husband's executor was for the construction of the wife's will, it is proper that the wife's estate should bear the costs.

BILL FOR CONSTRUCTION OF A WILL.   The cause was heard on bill, amended bill, answer and oral testimony of witnesses.   The facts are sufficiently stated in the opinion of the Chancellor.

*James M. Tunnell*, for complainant.

*Charles W. Cullen* and *Daniel J. Layton*, for defendant.

THE CHANCELLOR.   The administratrix c. t. a. of Nancy Floyd filed a bill against the administrator of Smith Floyd for a construction of the will of Nancy Floyd and to obtain from the administrator of Smith Floyd assets in the hands of the latter claimed to belong to the former.   Nancy Floyd, owning a farm and some personal estate, died November 7, 1914, and by will provided, among other things, as follows:

"I give to my beloved husband, at my death, Smith W. Floyd, all of my movable and real property as long as he shall live, and he shall have a right to sell what timber off the place as long as he shall live for his support and put improvements on the place for his comfort."

By other items which follow she gave one-half of "all clear proceeds of my estate" at her husband's death to Mary H. Hudson; desired that at the death of the testator's husband the timber land be sold; and at her husband's death gave one-half of her estate to named persons.

It was alleged and shown that Smith Floyd after his wife's death sold her personal property and soon thereafter deposited in a bank six hundred dollars to his own credit.   It was shown that about three hundred dollars of this was the proceeds of the sale of personal property of his wife.   Later he sold timber from the farm which his wife owned at her death and deposited to his own credit in the same bank one thousand dollars, the money so realized.   Having sixteen hundred dollars on deposit in the bank, Smith Floyd in 1917 bought a bond of the United States of America for five hundred dollars.   At his death the bond, payable

to bearer, was in the custody of the bank for him and eleven hundred dollars stood to his credit there. It was shown that he had no property of his own, except a small amount of personal property. There were no additions to the moneys in the bank, and no withdrawals therefrom, other than for the purchase of the bond.

It was claimed by the administrator c. t. a. of Nancy Floyd that thirteen hundred dollars of the moneys so received by Smith Floyd, and not used by him in his lifetime, belonged to his wife's estate, and the administrator of Smith Floyd also claimed it as his property on the ground that there had been a conversion thereof by him in his life to his own use.

Here, then, there is a general gift of all of the testator's property, real and personal, to her husband for life, with a general gift over at his death. Also a right is given him to sell timber for his support and to make improvements on the farm, with a general gift at his death. The life tenant has converted into money personalty and sold timber, and had at his death all of the proceeds of sale in a bank or invested in a government bond. The rights of the parties as to the personal property and as to the proceeds of the sale of the timber will be considered separately.

There are three decisions in the courts of this State bearing on bequests of life estates in personal property. In the case of *State, Use of Savin, v. Savin* (reported in a note to *State, Use of Pepper v. Warrington*, 4 *Harr.* 55, 56), the bequest was to the testator's widow of one-third of his personal estate for life, with no limitation over at her death. The character of the personal property was not stated in the report. The case was heard by three distinguished lawyers as referees, John M. Clayton, Samuel M. Harrington and Joseph P. Comegys. In their report, which was confirmed, they held that the gift was an absolute one because there was no gift in remainder. They also stated the law to be that the gift for life of a chattel with an executory devise thereof at the death of the life tenant was an absolute gift as to a chattel the use of which consists in its consumption; but that the gift in remainder of a chattel which might be used without being consumed is good by way of executory devise. This latter declaration was an *obiter dictum*, for there was no gift in remainder and the

character of the personal property was, therefore, immaterial. In the case of *State, Use of Pepper, v. Warrington*, 4 *Harr.* 55 (1843), there was a gift by will of one-third of the testator's personal estate to his wife during her widowhood, and after her death or marriage then to her seven daughters. The executor paid the widow in money one-third of the clear residue of the personal estate, and after her death one of the daughters brought suit at law against the widow's executor to recover as one of those entitled in remainder her share of the moneys so paid to the widow. On demurrer to the declaration the Court gave judgment for the plaintiff, but no opinion is set out in the report. This is a clear decision that a gift after a life estate given generally of a portion of the testator's personal estate is good as an executory gift.

The other case is that of *Derickson v. Gardner*, 5 *Del. Ch.* 323 (1880), where there was a gift by the will of Francis R. Gardner of all of his property, real and personal, to his wife for life, but should she marry again and the testator leave a child, then to the child at the mother's death, and if he die without leaving a child, then to his wife absolutely. His wife survived him, did not remarry and the testator had no child. The estate consisted entirely of a debt due the testator. Chancellor Bates after quoting language of the referees in *Savin v. Savin, supra,* held that the widow took the personal estate absolutely, because the only limitation on her gift was the birth of a child in the testator's lifetime, and as that event did not happen the gift to the widow continued to be an absolute one. This was an application of the rule applied in *Savin v. Savin,* there being, as it turned out, at the testator's death no gift in remainder after the life estate.

From these cases the law of this State seems settled as to gifts for life of personal property other than specific chattels, for in none of these cases does it appear that the subject-matter of the bequests was a specific chattel, each being gifts of all or a proportion of the testator's estate or personal property generally. A gift of personal property for life with no gift over is an absolute gift. *Savin v. Savin, supra.* In *Derickson v. Gardner, supra,* Chancellor Bates stated the same rule, but erroneously cited *Pepper v. Warrington, supra,* as an authority for it. If there be a general gift of personal property to one for life with a gift over,

on a contingency which does not happen, the life beneficiary takes an absolute estate. *Derickson v. Gardner, supra.* Where there is a gift of a share of the testator's personal estate generally for life or widowhood with a gift over at the death or marriage of the life tenant, the executory gift is valid. *Pepper v. Warrington, supra.* Consistent with these principles is the other rules as to chattels stated by the referees in *Savin v. Savin, supra,* and referred to but not applied by Chancellor Bates in *Derickson v. Gardner,* viz. that a gift for life of specific personal property with a gift over vests in the first taker an absolute interest, except where the gift is of a chattel which may be used by the first taker without being consumed, a gift of the latter kind being good as an executory devise. This last-mentioned principle is not applicable in the case under consideration, for the gift was of all of the testator's personal estate, called "movable property," and besides the character of the property was not shown.

Elsewhere than in Delaware it has been generally held that if there be a general gift of personalty and not specific chattels for life with a gift over at the death of the first taker, the property should be converted into money and the principal invested and preserved for the remaindermen, the life tenant taking the income. *Healey v. Toppan,* 45 *N. H.* 243, 86 *Am. Dec.* 159; 2 *Alexander on Wills,* § 978; 11 *Ruling Case Law,* 475; 16 *L. R. A. (N. S.)* 483, note. *Contra, Evans v. Iglehart,* 6 *Gill & J. (Md.)* 197, approved in *Seabrook v. Grimes,* 107 *Md.* 410, 68 *Atl.* 883, 16 *L. R. A. (N. S.)* 483, 126 *Am. St. Rep.* 400. But there has been no decision in this State adopting the rule above mentioned, and it is not pertinent to consider it in this case since the life estate has ended. However that rule is not inconsistent with the decision in *Pepper v. Warrington, supra,* sustaining the validity of the executory gift of a share of the testator's personalty after a life estate.

Applying these principles to the case under consideration, it is clear that the executory gift after the death of the life tenant was valid, and inasmuch as it was clearly shown that the money realized by Smith Floyd, the life tenant, from the sale of the personal estate of his wife was at his death on deposit in a bank to his credit as deposited by him, it belongs to those entitled under items 7 and 9 of his wife's will to her personal estate at his death.

The amount so realized and deposited is the sum of three hundred dollars, as nearly as can be ascertained.

As to the proceeds of the sale of the timber there is little difficulty. There was given to the husband of the testatrix a life estate in all her property with a right to sell timber (1) for his support, and (2) for putting improvements on the farm; and he sold timber, but did not use the proceeds for either of the above-stated purposes, and the money was clearly traced to the bank. The right as a life tenant to cut timber and sell it for his support did not vest in him an absolute title to the proceeds of sale, but only for the above purposes, and any that remained unused belonged to those entitled in remainder. To hold otherwise would defeat the plainly expressed intention of the testatrix, and there is no principle of law applicable here to defeat that intention.

An executory devise after a gift with a general and absolute power of disposal is void. But where a life estate is expressly given with a power of disposal for support of the life tenant, or for specified purposes, a gift of what remains is valid. This principle was adopted in the case of *Newlin v. Phillips, (Del. Ch.)* 60 *Atl.* 1068 (1905), where there was a gift by a testator of all his property to his wife "to have, to hold, to keep and enjoy for her own use and benefit," followed by a gift of what might remain at her death, and it was held to be a life estate with power of disposal for the purpose of support in her life, but that she had no right to dispose of it by will, and that whatever property of her husband remained in her hands at her death passed to those entitled under her husband's will after her death.

Chancellor Kent in *Jackson v. Robins*, 16 *Johns. (N. Y.)* 537, 588, said:

"We may lay it down, as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is, where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion."

See, also, *Stuart v. Walker*, 72 *Me.* 145, 39 *Am. Rep.* 311; *Copeland v. Barron,* 72 *Me.* 206; *Stevens v. Winship,* 1 *Pick. (Mass.)* 318, 11 *Am. Dec.* 178; *Larned v. Bridge,* 17 *Pick. (Mass.)* 339;

*Gadd v. Stoner,* 113 *Mich.* 689, 71 *N. W.* 1111; *Terry v. Wiggins,* 47 *N. Y.* 512; *Smith v. Van Ostrand,* 64 *N. Y.* 278; *Geist's Estate,* 193 *Pa.* 398, 44 *Atl.* 437; *Pillow v. Rye,* 1 *Swan (Tenn.)* 185; *Downing v. Johnson,* 5 *Cold. (Tenn.)* 229; *McGavock v. Pugsley,* 1 *Tenn. Ch.* 410, 12 *Keisk.* 689; *Pool v. Pool,* 10 *Lea (Tenn.)* 486; *Chaplin v. Doty,* 60 *Vt.* 712, 15 *Atl.* 362; *Judevine v. Judevine,* 61 *Vt.* 595, 18 *Atl.* 778, 7 *L. R. A.* 517; *Post v. Campbell,* 110 *Wis.* 378, 85 *N. W.* 1032; *Grace v. Perry,* 197 *Mo.* 550, 95 *S. W.* 875, 7 *Ann. Cas.* 948, also reported with a copious note in 7 *Am. & Eng. Annotated Cases,* 753.

When property has been sold by the life tenant in execution of the power of disposition, any proceeds of sale which at his death remain unexpended for the authorized purpose go to the remainderman. *Cushman v. Goodwin,* 95 *Me.* 353, 50 *Atl.* 50; *Keniston v. Mayhew,* 169 *Mass.* 166, 47 *N. E.* 612.

The absence of a gift over expressly of what remains, or similar expression, does not justify a different conclusion. A general residuary gift is effective to pass what remains undisposed of by the life tenant who has exercised a power to use the property for a particular purpose. No authority has been found which makes such a distinction.

The moneys received from the sale of the timber is readily capable of identification. It went into a certain bank with other moneys of the life tenant, and must have remained there, for none of the money so deposited was withdrawn, except five hundred dollars for the purchase of a bond, and the bond into which the money went is also identified. The mere act by a trustee of mingling trust money with his own in his individual name, with nothing done by the banker to distinguish the trust money from the individual money, does not necessarily prevent identification of the trust fund, for equity will disentangle the accounts. *Cushman v. Goodwin,* 95 *Me.* 353, 358, 50 *Atl.* 50.

The executory gift of the proceeds of the sale of the timber was, therefore, valid, and as none of it was used for either of the purposes designated in the will, the sum of money which Smith Floyd had received from the sale of the timber belongs to the beneficiaries under Items 7 and 9 of the will of Nancy Floyd. While these beneficiaries might themselves have enforced the

rights, and perhaps that would have been the better course (*Cushman v. Goodwin*, 95 *Me.* 353, 50 *Atl.* 50), still the administratrix d. b. n. c. t. a. of Nancy Floyd sufficiently represents them to justify a decree for the payment and delivery to her of the money and bond. The distributees of the estate of Smith Floyd are represented by his administrator so as to bind them by the decree.

The conclusion, therefore, is that these beneficiaries in remainder of the testator's estate are entitled to the proceeds of the sale of both the personal property and the timber, as represented by the money on deposit in the bank at his death and by the bond in which he had invested part of such proceeds.

Inasmuch as the proceeding was taken to obtain a construction of the will of Nancy Floyd it is proper that the costs of the cause be paid from the money which will come to her personal representative.

A decree will be entered in accordance with this opinion.